IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03184-LTB

LA'RON MARSHALL,

    Applicant,

v.

J. OLIVER,

    Respondent.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 5) ("the Application"), filed *pro se* by Applicant, La'Ron Marshall.  Applicant also filed a Memorandum of Law in Support of the Amended Application (ECF No. 6) and a Declaration (ECF No. 7).  On December 29, 2014, Respondent was ordered to file a Pre-Answer Response limited to addressing the affirmative defense of exhaustion of administrative remedies.  (ECF No. 8).  On January 16, 2015, Respondent filed a Preliminary Response asserting that Applicant failed to exhaust his administrative remedies. (ECF No. 13).  On March 4, 2015, the Court ordered Respondent to file a supplement to the preliminary response to address the issue of whether prison officials made the administrative remedy unavailable to Applicant. (ECF No. 14).  Respondent filed its Supplement to the Preliminary Response on March 24, 2015. (ECF No. 15).  On April 21, 2015, the Court ordered Respondent to Show Cause why the habeas application should not be granted. (ECF No. 18).

Respondent filed a Response to the Order to Show Cause on May 12, 2015. (ECF No. 20).  Applicant had the opportunity to file a Reply, but failed to do so.

The Court must construe the Application liberally because Mr. Marshall is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

After reviewing the pertinent portions of the record in this case, including the Amended Application, the Memorandum of law in Support of the Amended Application, Applicant's Declaration, the Preliminary Response, the Supplement to the Preliminary Response, and the Response to the Order to Show Cause, the Court concludes that the Application should be denied.

**I.  Background**

Mr. Marshall is a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), currently incarcerated at the United States Penitentiary, Administrative Maximum, in Florence, Colorado.  He is serving a 15-year, 3-month sentence for charges related to an armed bank robbery. (ECF No. 13-1 at 1-2, 8). He filed this action seeking an expungement of an incident report and a restoration of his lost good time credits. (ECF No. 5).  According to Mr. Marshall, he was under psychological distress at the time of the incident but he never received a psychological evaluation prior to the disciplinary hearing, which was a denial of his due process rights. (ECF No. 6 at 3).

On April 24, 2013, an incident occurred, which resulted in Applicant being accused of assault on prison staff and refusing to obey an order.  Specifically, the

Incident Report stated:

> At approximately 1:15pm while picking up trays on range 1 of F-A unit, Officer Basta and I arrived at Inmate Marshall['s] . . . cell. Inmate Marshall returned his trays then reached through the open slot and tied his bed sheet to the trap in a manner as to keep it open. He then tried to reach trough [sic] and grab my arm. I immediately stepped back and yelled "hey knock that off" He then began throwing hard bars of soap at Officer Basta and me, striking each of us several times. Striking myself in the upper torso and chest region. I attempted once to get the tray slot closed to prevent Inmate Marshall from further assaulting us but failed to do so. I got on my radio and informed the officer in control of the situation and waited at the door for the LT. to show up.

(ECF No. 7 at 7).

Applicant received a copy of the Incident Report on April 28, 2013. (*Id.*) The Disciplinary Hearing was held on May 31, 2013. (ECF No. 7 at 4). On July 10, 2013, Applicant received the Disciplinary Hearing Officer (DHO) report, finding him guilty of assault, which resulted in a loss of 27 (twenty-seven) days of good time credit, as well as other sanctions. (ECF No. 7 at 5).

Under the BOP Regulations, Applicant had twenty (20) days for the Regional Office to receive his appeal, which would be July 30, 2013. *See* § 28 C.F.R. 542.14(a). Applicant received an appeal form from his correctional counsel, Darren Foster, on July 18, 2013, eight (8) days after he received the DHO report. (ECF No. 20 at 5). The appeal form was received by the Regional Office on August 2, 2013, which rejected it as untimely. (ECF No. 7 at 8). The Regional Office advised Applicant that he had ten (10) days to "provide staff verification on BOP letterhead that the untimeliness [was] not [his] fault." (ECF No. 7 at 8).

According to the Applicant, he requested a staff memo from his counselor, Mr.

Foster, who told him he would not provide one and that "there is nothing to be done about this rejection, they're rejecting everything." (ECF No. 7 at 14).

Unable to obtain a staff memo to provide to the Regional Office, on September 4, 2013, Applicant filed an appeal with the Central Office. The Central Office affirmed the Regional Office's rejection and advised Applicant "to follow the directions provided on the region's rejection notice. Obtain staff memo for untimeliness." (ECF No. 13-1).

Eventually, on May 22, 2014, Applicant was able to obtain a staff memorandum from a new correctional counselor, Mr. Humphries. (ECF No. 7 at 10). On June 6, 2014, Applicant filed a new appeal with the Regional Office and apparently enclosed the staff memorandum from Mr. Humphries. However, the Regional Office rejected the appeal as untimely on June 11, 2014. (ECF No. 7 at 11). He again filed an appeal to the Central Office on July 31, 2014, which was also rejected as untimely. (ECF No. 7 at 15). The Central Office advised Applicant that to avoid rejection of his request as untimely he was required to submit a staff memorandum explaining that his untimely submission was not his fault. (*Id.*). There is no indication as to whether either the Regional or Central Office considered the staff memorandum by Mr. Humphries.

Mr. Marshall asserts one claim for relief in his Application. He claims that his constitutional right to due process was violated because he was denied a psychological evaluation before the disciplinary hearing.

**II. Application**

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411

U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Mr. Marshall "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### A. Exhaustion

Exhaustion of administrative remedies is a prerequisite to federal habeas corpus relief pursuant to 28 U.S.C. § 2241. *See Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). The exhaustion requirement is satisfied through proper use of the available administrative procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) (discussing exhaustion of administrative remedies in the context of 42 U.S.C. § 1997e(a)).

Inmates seeking to file § 2241 habeas petitions exhaust their administrative remedies by complying with the BOP's Administrative Remedy Program. *See* 28 CFR §§ 542.14-542.15. In order for an inmate to appeal a DHO decision, he must complete a two-step administrative remedy program. 28 C.F.R.§§ 542.10-542.19. The first step requires the inmate to initially appeal with "the Regional Director for the region where the inmate is currently located," within 20 days of the DHO's decision. 28 C.F.R. § 542.15 (known as the "BP-10 appeal"). If the appeal is denied in step one, the second step requires the inmate to appeal to the Central Office within 30 days. *Id.* (known as the "BP-11 appeal").

The burden of showing exhaustion rests on the applicant in a habeas action.

*Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981); *see also Jones v. Davis*, 366 F. App'x 942, 944 (10th Cir. 2010). An exception to the exhaustion requirement applies if prison officials made exhaustion unavailable or if exhaustion would be futile. *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2006)) (applying PLRA's exhaustion requirement); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). A remedy is not available when prison officials hinder, thwart, or prevent an inmate's attempts to exhaust that remedy. *Tuckel, 660 F.3d at 1252 (citing Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010)). The Court must ensure that "any defects in exhaustion [are] not procured from the action or inaction of prison officials." *Aquilar—Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Respondent argues that Applicant failed to exhaust his administrative remedies. Applicant argues that he attempted to exhaust his administrative remedies, but prison officials prevented him from doing so. For the reasons stated below, the court finds that there are unresolved factual issues as to whether prison officials hindered Applicant's ability to exhaust his administrative remedies.

According to Applicant, prison officials did not timely provide him with forms to appeal the DHO decision and then did not timely mail his appeal. Furthermore, when the Regional Office rejected his appeal as untimely, they informed him that if he obtained a staff memorandum within ten (10) days stating that the untimeliness was not his fault, they would consider his appeal. (ECF No. 7 at 8). He attempted to obtain a staff memorandum, but according to Applicant, his prison counselor at the time refused

6

to provide one, stating, "there is nothing to be done about this rejection, they're rejecting everything." (ECF No. 1 at 14).

Many months later, on May 22, 2014, Applicant was able to obtain a staff memorandum from a new prison counselor, Mr. Humphries. (ECF No. 7 at 10).  In the staff memo, Mr. Humphries stated Applicant received the original appeal form eight (8) days after he received the DHO report "due to institutional staffing issues" and that the original appeal was mailed July 29, 2013 "also due to staffing issues within the inmate's unit team." (*Id.*).  Applicant submitted new appeals first to the Regional and then the Central Office with the staff memorandum enclosed.   His appeals were rejected but there is no indication that either the Regional or Central Offices considered the staff memo. (ECF No. 7 at 11, 15).

In a similar case, where the inmate alleged that his prison counselor (in fact it was the exact same prison counselor, Darren Foster, as in the instant case) failed to provide the inmate with BP-10 forms to file an appeal, the Tenth Circuit remanded the case for the district court to resolve the factual dispute as to whether the prison officials impaired the inmate's attempt to exhaust his administrative remedy by refusing to provide him with the appropriate forms. *See Pinson v. Berkebile*, 1:14-cv-00410, 2015 U.S. App. LEXIS 3699 (March 10, 2015) (citing *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.")). Like the prisoner in *Pinson*, here, the Applicant alleges that prison officials hindered his ability to timely exhaust his

administrative remedies.

Respondent maintains that Applicant did not submit his appeal in time and then, when given the opportunity to submit a staff memo explaining the untimeliness, he failed to do so in a timely manner also.  As to Applicant's allegations that Counselor Foster refused to provide a staff memorandum and told Applicant "there is nothing to be done about this rejection, they're rejecting everything," the Respondent concedes that if these allegations were true, they might establish that the BOP made administrative remedies unavailable to Applicant. (*See* ECF No. 15 at 4).  However, Respondent argues that the allegations are false. *Id.*

In an attempt to support its position, Respondent provides an affidavit from Mr. Foster, which states he "does not believe" the conversation with Applicant occurred and he "does not recall" Applicant requesting a staff memorandum. (ECF No. 15-1 at 2-3). The affidavit is far from conclusive evidence that the Applicant's allegations are false; instead, they merely indicate that Mr. Foster does not have a significant memory of specific events that occurred with Applicant.

Therefore, there is a material issue of fact as to whether the BOP made administrative remedies unavailable to Applicant.  In addition, it is unclear whether the Regional or Central Office considered the staff memorandum written by Mr. Humphries explaining the untimeliness of Applicant's initial appeal.

Due to unanswered questions as to whether prison officials impeded Applicant's ability to exhaust his administrative remedies and the issue as to whether the staff memorandum by Mr. Humphries was ever considered by the Regional or Central Office,

the Court is unable to determine, on the record currently before it, whether Applicant's failure to exhaust his administrative remedies should be excused.

However, the Court does not need to resolve the issues concerning exhaustion of administrative remedies because the Application is subject to dismissal on the merits. *See United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008) (citing *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000)).

### B.  Merits of Due Process Claim

Applicant's substantive § 2241 claim is that he lost 27 (twenty-seven) days of good time credit without due process.  According to Applicant, he was denied due process at his disciplinary hearing because he was under psychological distress at the time of the incident yet he was never evaluated by a psychologist prior to the disciplinary hearing.  Respondent argues that because Applicant did not appear to be mentally ill at any time, he was not entitled to a mental health examination.  The Court agrees with the Respondent.  Furthermore, the Court notes that Applicant did receive a mental health examination prior to the disciplinary hearing.

With respect to prison disciplinary proceedings, "[i]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction).  However, prison disciplinary proceedings are not

criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974). A disciplinary hearing satisfies due process if it affords the prisoner: 1) written notice of the violation at least 24 hours before the hearing; 2) an opportunity to call witnesses and present documentary evidence (if consistent with institutional safety and correctional goals) to an impartial decision-maker; and 3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563–66. In addition, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

In the Application, Mr. Marshall does not contend that the procedural requirements mandated by *Wolff* were not met in this case. Instead, he argues that he was not provided a psychological evaluation as provided in the BOP's regulations. However, "a failure to adhere to administrative regulations does not equate to a constitutional violation." See *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir.1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also Diaz v. McGuire*, No. 05-3149, 154 F. App'x 81, 84-85 (10th Cir. Nov. 14, 2005) (recognizing that prison regulations are "primarily designed to guide correctional officials in the administration of a prison . . . not [ ] to confer rights on inmates"). A review of an Applicant's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and

whether there was some evidence to support the disciplinary committee's findings." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

However, the Tenth Circuit has held that when a habeas petitioner claims that the BOP should have conducted a mental health determination prior to conducting a disciplinary hearing because the prisoner appeared mentally ill, the claim should be fully considered by a district court. *See Pinson v. Berkebile*, 528 Fed. Appx. 822, 828-29 (10th Cir. 2013).  Therefore, in addition to the *Wolff* due process guarantees, there are some additional due process safeguards afforded to mentally ill inmates.

The BOP's regulations specifically address discipline of a prisoner who appears mentally ill, is incompetent to participate in disciplinary proceedings, or is not responsible for his conduct because of a severe mental disease or defect.

The applicable BOP regulation, 28 CFR § 541.6, states:

> If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.
>
> (a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.
>
> (b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

*Id.*

This Court does not need to address the credibility of Applicant's allegations regarding his mental health status, but only whether he was denied due process in the disciplinary proceeding based on his mental health status. On the record before the Court, the Court finds and concludes that Applicant was not denied due process. Further, the Court finds that even if the BOP regulation § 541.6 was considered a minimum due process requirement, it was not violated.

The Respondent was on notice that Applicant believed his actions were a result of his "psychological distress." The DHO Report, dated July 5, 2013, states:

> You admitted to assaulting staff with soap bars at the DHO hearing, claiming that you were under psychological duress. You requested Coulter, PsyD, as a witness that you were under psychological distress at the time of the incident. Dr. Coulter was contacted and verified that you were in fact competent and responsible for your actions during this incident.

(ECF No. 1 at 13). However, beyond Applicant's self proclaimed statement that he suffered from "psychological distress" at the time of the incident, there was no evidence that he appeared mentally ill at any time. Additionally, the record contains evidence that the prison officials were adequately monitoring Applicant's mental health status before and after the incident. Respondent submitted a Declaration by Dr. Jennifer Coulter-Rodriguez, a staff psychologist at FCC Florence. (ECF No. 20-2). She stated that Applicant has been classified as Care 1-Mental Health since June 2010. (ECF No. 20-2 at 3). She explained that an individual meets CARE1-MH criteria if he:

>> a. Shows no significant level of functional impairment associated with a mental illness and demonstrates no need for regular mental health interventions; and
>
>> b. Has no history of serious functional impairment due to mental illness or if a history of mental illness is present, the inmate has consistently demonstrated appropriate help-seeking behavior in response to any reemergence of symptoms.

(ECF No. 20-2 at 3).

She stated that she conducted a psychological review of Applicant on May 14, 2013, while Applicant was housed in the Special Housing Unit ("SHU"), as a result of the incident, and concluded that there were no mental health concerns evident. (ECF No. 20-2 at 3-4). This review occurred after the April 24, 2013 incident but before the May 31, 2013 DHO Hearing. She further states that on May 31, 2013, she was contacted by the DHO who advised her that Applicant requested her as a witness. (ECF No. 20-2 at 4). In response, she reviewed Applicant's psychology record. As part of the review of Applicant's record, she noted that five (5) days before the incident, on April 19, 2013, a 30-day review was conducted for Applicant, during unit rounds on applicant's unit. (*Id.*) The record noted that "inmate acknowledged the writer by giving a thumbs up but did not request psychology services during ADX rounds." (*Id.*) It also noted that "visual observation did not reveal any obvious distress" and his cell was clean and orderly. (*Id.*) Based on the information from Applicant's record, as well as her own review on May 14, 2013, Dr. Coulter-Rodriguez provided her clinical opinion to the DHO via written electronic mail on May 31, 2013 that Applicant was competent and [responsible] for his actions during the time of the incident on April 24, 2013. (*Id.*)

The Court also notes that Mr. Marshall's statements regarding whether or not he received a psychological examination prior to his disciplinary hearing are inconsistent. In his Memorandum of Law, Mr. Marshall states "Before, during, or after the incident had occurred, Applicant was never evaluated by Dr. Jennifer Coulter (or any other psychologist) before applicant's (good-time) credits were revoked." (ECF No. 6 at 2). In contrast, in his Declaration, Mr. Marshall that he "was not examined [by a psychologist] until 5-14-13 and 6-13-13." (ECF No. 7 at 2). The incident in question occurred on April 24, 2013, and the disciplinary hearing occurred on May 31, 2013. Therefore, the psychological examination on May 14, 2013, which Mr. Marshall refers to in his Declaration and which Dr. Coulter-Rodriguez also verifies in her Declaration, occurred after the incident but before the disciplinary hearing when his good-time credits were revoked.

Based on the foregoing, the record before the Court clearly establishes that the Applicant was provided due process in his prison disciplinary hearing. The mere fact that Applicant stated he committed the offense because he was "under psychological distress" does not, by itself, give rise to the appearance that he is mentally ill. The record is devoid of any evidence that would lead any staff member to believe he was mentally ill. As such, no psychological exam was required. Furthermore, although not required because he did not appear mentally ill, this Court finds that Applicant received a mental health evaluation and a significant investigation into his mental health status prior to the DHO hearing. Accordingly, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2241 (ECF No. 5) is DENIED and this action is DISMISSED with prejudice.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* is denied for the purpose of appeal.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Marshall files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, this   11th   day of   August  , 2015.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, Senior Judge
United States District Court